Good morning, Illinois public court first district court is now in session, the third division, the Honorable Justice Margaret s McBride presiding case number two one dash 1078 people versus Dennis Rubio. Good morning, everyone. Good morning. Before we begin, I would ask the lawyers. Excuse me. For each party for the appellant and the employee to identify themselves for the record. But could we do that first. Good morning, Your Honor, I'm assistant appellate defender Matthew Daniels and I represent the appellant Dennis Rubio. Good morning, Mr. Daniels. Good morning. Good morning, Your Honor, Assistant State's Attorney Kimberly Reeve on behalf of the people of the state of Illinois. Good morning, Miss Reed. I do want to mention that I have been alerted that my microphone is a little bit off. And if you are unable to hear or understand the question I asked, would you please let me know I apologize in advance. I will also advise you that preceding over this argument with me are Justice Jesse Reyes and Justice O'Neill Burke. We will give each of you about 10 minutes to proceed uninterrupted. We find that's the most orderly way to do this. Although perhaps it's not as spontaneous as other oral arguments in person but that's been our procedure at least in this division. So, Mr. Daniels will give you about 10 minutes of uninterrupted time but from that, please save some time for your rebuttal. And then we will proceed with questions to Mr. Daniels. Then we will move on to Miss Reeve. And again, you'll have about 10 minutes uninterrupted time and you can use your 10 or whatever. You don't have to but you certainly are allowed to. All right. So with that, we will proceed. And Mr. Daniels, I am going to kind of keep a time watch on. So just keep that in mind. But we usually let people, you know, proceed. So you may begin. May it please the court. Counsel. Following a bench trial, Dennis Rubio was convicted of aggravated criminal sexual abuse, creation of child pornography, and possession of child pornography. The two convictions that are at issue here are the child pornography counts. Specifically the creation of child pornography count is count one. The possession of child pornography count is count four. Both of those child pornography convictions arise out of a single video recording. It's the one in the record with the file name that ends in 225048. Mr. Rubio made that video using his cell phone, which was confiscated from him just minutes after making the video. He took no affirmative steps to save the video on his phone or another device. The only question presented here in this appeal is whether the one act one crime rule requires his possession conviction. That's come for to be vacant. The answer to that, your honors is yes. This court should vacate Mr. Rubio's conviction for count four for two reasons. First, his creation and possession convictions arise out of the same physical acts. And second, even if those convictions arise out of multiple acts, possessing child pornography is a lesser included offense of creating child pornography. So turning to my first point, Mr. Rubio's creation and possession of child pornography convictions in this case are based on the same physical act. Here in count one, that's the creation of child pornography conviction. Mr. Rubio was convicted of creating that video. I told you the first one that he took, the one to end in 225048. It's a 46 second video. The possession conviction that's count for. The I know of child pornography that he was convicted of possessing is that same 46 second video. There was no overt or outward manifestation that supported a different offense. Now, the trial court relied on people versus Reyes to hold that there were two separate acts, but Reyes doesn't apply here. Unlike Reyes, we're not dealing with a situation where the two convictions at issue are both convictions for creating child pornography. That was a situation Reyes, but it's not the situation here. Instead, what we have is one conviction for creating child pornography and one conviction for possessing child pornography. So, in other words, the content of the video here doesn't matter because the number of acts of sexual conduct doesn't matter. And I realize that's a point in the briefs that there was a lot of discussion about whether there were multiple acts in the video itself or not. That doesn't matter here because what we're dealing with are not two convictions for creating child pornography. It's creation and possession are the two convictions we have here. And we're not asking to vacate the aggravated criminal sexual abuse conviction. Here, what we have are two convictions for child pornography that are based off of the same physical act, using that cell phone to create the 46 second video. Now, we recognize that there can be situations where the simultaneous creation and possession of child pornography can support findings of separate physical acts. Donovan is a situation that is discussed in the briefs that is exemplary of that. But that's not true on this record. Under Donovan, what is clear is that what's needed to have separate physical acts in a situation like this is that there needs to be both some passage of time, as well as evidence that the defendant's post-creation conduct demonstrates that a separate possession occurred. And here, that's not the case. No separate possession occurred. Just minutes passed between the time Rubio hit record and the time that the police arrived and he's arrested. Specifically, less than 40 seconds passed between the time he stopped recording the video that's at issue here with his convictions and the time that he's confronted by the victim's mother, Erica. That confrontation between him and Erica quickly escalates when she calls out for help and her husband and son come in and they're beginning to attack Rubio. The police are on the scene at the house less than four minutes later. Moreover, once Mr. Rubio was confronted by Erica, he tried to delete the recordings that he made. So this really is the fact pattern that was envisioned by the special concurrence in Donovan, where we really do have the creation and possession being the same physical act. And for that reason, because we have just a single physical act, the analysis should stop here and multiple convictions are improper. Turning to my second point, even if the possession or if the child pornography convictions here are based on separate acts, count four should still be vacated under the second step of one act, one crime analysis. And here we use the abstract elements approach. The essence of that inquiry is that a conviction is a lesser included where it's impossible to commit the greater offense without also committing the lesser offense. And that's what we have here. There is no dispute that creating child pornography is a greater offense than possessing child pornography. Creating child pornography is a class X, possessing is a class two. And under the Illinois child pornography statute, it is impossible to commit creation of child pornography without also committing possession of child pornography. That's because creating child pornography contains all of the elements of possessing child pornography. Now, the state disagrees here and says that there's an additional element with possession, specifically the elements of knowledge, which is expressly in that provision of the statute, but not in the creation section. But creation of child pornography includes an implied mens rea of knowledge. Section 4.3 of the Criminal Code requires that every criminal act have a couple of mental states unless it is a strict liability offense. And the state hasn't argued that creation of child pornography is a strict liability offense. Moreover, the state relies on People v. Marzoni as well as a federal case, Gomez-Diaz, regarding the second step of the analysis. But both of those decisions are distinguishable. They both are cases that involve unique statutes that are different than the child pornography statute. And in Marzoni and Gomez, the statutes allow for the creation of contraband without possessing it. So in Marzoni, that was a case involving the Methamphetamine Control and Community Protection Act. And there, the analysis regarding lesser included turned on a statutory definition of the word participate. And that word participate is broadly defined by the meth statutes. It includes assisting in the manufacture of methamphetamine, which allowed for a conviction for participating without actually ever possessing methamphetamine. Gomez-Diaz is the federal case. And there, the defendant was convicted of producing child pornography. And there was some lesser included analysis provided regarding an instructional air clean. There, the court found that there was not a lesser included of possessing child pornography. But again, that's because the statute is different than the Illinois child pornography statutes. Under the federal statute, liability is possible for producing child pornography for non-possessory acts like transporting a minor or persuading a minor to engage in sexual conduct for the purposes of creating the child pornography. I just want to let you know, you've got about a minute and a half left, if you want to save some time for rebuttal. That's fine. I was just going to wrap up and say, go ahead and wrap up then. Sure. Here, we have a lesser included offense. And in some, because under either step of the one act, one crime analysis, this court should vacate count four. All right. We will allow some time for rebuttal. Right now, I'm going to turn it over to the justices. Justice Burke, do you have questions? I do. Good morning, Mr. Daniels. How are you today? Good. How are you doing, Your Honor? Excellent. Thank you. Okay, so the first question I have is, you're pointing to the very brief passage of time between the three videos that were created, correct? You're using that as like, this was kind of one act. It was a series of acts. And because they were so tied together, it was all one thing. Am I characterizing that correctly? Your Honor, I think that's in the right ballpark. Maybe to clarify a little. Time is certainly relevant. I recognize it's not this positive here. And specifically that the short passage of time we have is between the time that he is finished recording that first video and the time either that he's been confronted by the victim's mother or by the time he's actually lost possession of the phone during the confrontation. Okay, under either Donovan or Reyes or any other case law, is there a time, like, is there anybody who says that's too short of a period of time for it to not be considered together? No, Your Honor. And I understand there's no bright line rule as to after X amount of minutes, hours, or days elapse, then you get to the point of having sufficient evidence to show that you have a separate physical act. It is very fact intensive from case to case. And you would agree that 16 seconds is plenty of time to delete something off of your phone, right? It could be, sure. Okay, so that's my first question. My second question is your argument regarding that possession is lesser included of creation. So, even today, we all had to confirm that this was going to be recorded as a Zoom, right? We all had to click that got it button. And so, it is possible to have a Zoom and never record it and nobody would ever possess this recording. And it's possible to go on Facebook and stream something and never record it. So, you could actually create a lot of child pornography and you would never possess it if you do not record it. Would you agree with me on that? I'm not sure, Your Honor. I mean, if we're looking at... How are you possessing it if it's streamed and not recorded? How are you possessing it? I suppose that the reason I'm hesitant to agree is that... I'm starting to pin you down on this. So, if it's not recorded, and you just created this, and it's not recorded anywhere, how could you be charged with possessing it? That's my question. By a reading of the text of subsection A-1. Okay. I'm looking at the statute, we have acts that include filming, videotaping, photographing. That's all content that I think is implied within it, that there's some sort of actual... I think streaming is something different than the activities that are described in the text. But you could be charged with creation if you are streaming something like that, you're filming, and you're projecting it out. That would be creation. I think anybody would find somebody guilty of creation of child pornography if they were streaming it. Well, I can certainly see that argument. I would still disagree that the text here specifically provides for liability under subsection A-1 for streaming. Okay, so under A-1, your argument is you could never charge somebody with creation of child pornography if they were merely streaming it, like on a Zoom or a Facebook Live or anything else. That's your position today. I don't think that would necessarily be true. Maybe it's under subsection A-3 where there's... If you look at that subsection, that discusses essentially producing or directing, so that's essentially like a live performance. I think streaming is more like a live performance than taking a photograph or using a video camera to record something. And Mr. Rubio wasn't charged under subsection A-3. Okay. All right, that's my only questions. Thank you. It's hard being a defense attorney sometimes. This is a case where it's hard. So, good job. All right, Justice Reyes. A couple of questions. One is following up on Justice Burke's questions with regards to when someone is capturing an image, wouldn't you argue that that in and of itself is possession? I mean, whether it's a photograph, whether it's on a phone, whether it's a video camera, regardless of what you do with it with regards to saving it or not, or is it you're still capturing an image, so you therefore possess it? Right. I believe that that's my point, Your Honor, that you can't create a piece of child pornography under the Illinois statute without actually being in either actual or constructive possession of the pornography. All right. And my other question is that you raise a point with regards to opening and closing statements during the trial of the prosecutor. And you indicate that they don't really, in both opening and closing, they don't separate the possession and the creation as two acts. Am I understanding that correctly? True, but what I would add to that is that I think there was some confusion in the briefs regarding that discussion, and maybe I can help clarify that now. I don't think, for the purposes of the one act, one crime analysis that we're doing with these two specific convictions, that the question of whether there were multiple acts or a single act in the video itself is relevant. It was relevant in Reyes because there were two separate convictions for creating child pornography, and we don't have that here. What we have instead is creating and possessing. Since those are the two convictions, there isn't a reason to be really focusing on the content of the video and answering the question of whether there are multiple acts. This court can make that decision on its own about whether there are multiple acts or not. My point is that because we're not dealing with two separate creation of child pornography convictions, that it's relevant to answering the first step of the one act, one crime analysis. Great. Thank you. No further questions. Mr. Daniels, your argument doesn't hinge on the suggestion that the defendant was trying to delete these photographs. I wouldn't say it hinges on it, but I think it's a relevant consideration. All right. Well, then I'm going to ask you, there really isn't any evidence that he actually tried to delete it, or are you saying that the fact that he was using the phone and pushing buttons that we should infer that that was an effort to try to delete? I think that's a reasonable inference. Coupled with that fact from the testimony of Erica, along with Sergeant Filipic's testimony, he was the lead detective who performed the forensic evaluation. His testimony was that this image wasn't found anywhere else except on that what's called DCIM file path on his phone. So I would submit that the most reasonable inference to draw from pressing the buttons was that he was trying to get rid of those photos because he got caught while he was recording. Okay. And then you said that there has to be some passage of time. And I think that the factors in the Beatty case, one of them is that we should consider the passage of time. But in this case, is there, I mean, I guess I'm going back to something maybe Justice Burke said, and that is that we don't have a parameter, outer or inner limit on that timeframe, do we? No, certainly not in the case law. It's a case by case determination. And do you think your stronger argument is the fact that the state didn't really charge in the documents at all separate acts? Or do you think that's not even, I mean, did you think it's relevant? I think it's relevant. I just have a quick answer for you whether I think it's more important than some of the other factors. It's certainly an important consideration. All right. All right. Based on that, do either of the justices have other questions at this time? No. All right. Thank you, Mr. Daniels. All right. We will now hear from you. And again, I will keep a, you know, timeframe in mind. So you may begin. May it please the court, counsel. Kimberly Reeve on behalf of the state of, or on behalf of the people of the state of Illinois. Today we ask this honorable court to affirm defendants convictions and sentences for two reasons. First, under one act, one crime defendant committed multiple acts, namely several acts of sexual conduct, filming and possession. Second, under the abstract illness approach, possession is not a lesser included offense of creation of child pornography. As to the first reason, pausing counsel stated that what's in the video is not important just because of the way it was charged. We had said it is important because it implicates the legislator's intent to protect a child each time that they are exposed and used for child pornography. So as to both protect the child from it and also not afford an offender a group discount. So when we look at the evidence here and we look at what's in the video, we have his first exposure of the child 20 seconds in when he pulls down her pants and runs his fingers along her butt. And then at 32 seconds in, he moved her blanket off of her and had to pull her pants down for a second time. And again, it's touching her at the time. So each of these exposures and separate touchings are offenses for concerning child pornography. And it helps with the legislator's intent to to have different offenses for each of these exposures. So which is what the trial court recognized when it found defendant guilty, as well as when it relied on Reyes, just for based on the legislator's intent for this. So based on that, the trial court also found that the people consistently at trial described these three, these multiple touchings throughout their arguments. Moreover, defendant also had the separate acts of filming his actions and then possessing the child pornography. So the legislator's intent to treat creation and possession as separate acts is also evident in the statute when it prescribed mere possession as a separate offense. Creation requires a person making, is making the child pornography, while possession requires the offender to assert his possession over the material. And the statute also provides for a sufficient amount of time to give up that possession. I, under, I believe it's section B5 of the statute. So and these are different outward manifestations under the King Doctrine for the difference of creating it and the difference of possessing it. So as applied here, defendant created the child pornography first by recording and filming his actions against the child. He then possessed the child pornography because he used his own phone and it saved to his phone. Counsel asserted that in the automatic saving to his phone in the DCIM folder is not very definitive of an evidence of possession. But the important point is that with today's technology, he did not have it set to save to something else like a cloud service belonging to somebody else or used a phone that did not belong to him for somebody else's benefit. So it is reasonable to assume that everything that's on his phone belongs to him. So and then there's also the manner of defendant recommitting to his possession. So he there was an intervening act when mom interrupted his actions while he was filming the third video. And then there was a struggle between the two. So during this struggle, defendant put his arm out to prevent her from reaching his phone. While she did say that he was pushing buttons, it can also be inferred that it looked like he was just trying to keep the phone from her specifically. This goes into that he puts his phone in his pocket. So and with that, putting his phone in his pocket, that's also him reasserting his possession. And we also have that he no point throughout that struggle or afterwards when dad and brother came in, he did not voluntarily give up his phone to them. He did not successfully delete videos. It was not until brother and dad came in, took the phone from him, that it was taken from his possession. But them taking this phone is not him giving up his possession. Also. So as for like the first prong of. Of one act one crime, he had these multiple different actions which were recognized by the trial court. As to our second reason, possession is not a lesser included offensive creation. When looking at whether one offense is a lesser included offense, the focus is on the elements of each fence and not on the evidence presented in the case. Looking at the two offenses that issue here, it is clear that creation does not require proof of possession over the material being created. While there are some shared elements, there are also elements that are not shared. Creation requires for the offender to be the person making the child pornography, while possession requires the person who takes possession of the child pornography knowing that it is child pornography. So a creator can stand behind a camera that does not belong to them, push the button and walk away with nothing in their possession. If proven that they push the button, then they are guilty of creating child pornography. They are not automatically guilty of possession of that child pornography because they never actually took it into their possession. And especially with today's technology and just as Burke pointed out moments ago, is that we can stream content direct to consumers without ever actually saving that content as the creator. So then it would be the consumers that would become the possessors if they took screenshots during that stream. So with that, today's technology makes it very easy to have that separation between creating something and possessing something. A defendant is asking this court to imply that the possession is inherent, which would make it an additional element to prove creation. But that goes against the legislator's intent because it is adding an element that the legislator has never required to prove for the offense of creation. It goes against the legislator's intent to dry up this market for child pornography and protect the child involved in these heinous actions. So if the element of possession were required to be proven, even implicitly, along with the remaining elements of creation, then the law would allow offenders to get away with making child pornography because they would be able to argue that they did not possess it because they streamed it. Or they, as it's described in Section B-5 for possession, they could then just say, I just possess this. I no longer hold possession after a sufficient amount of time to relinquish their possession. So since the legislator did not intend a possessional component to the creation of child pornography, it should not be presumed to be a necessary element of proof now. So as such, based on that, possession cannot be a lesser offense of creation. And at this point, I'm free to open to take questions. All right. Thank you, Ms. Reeve. Justice Burke? Good morning, Ms. Reeve. How are you today? Good morning. I'm great. Good. Okay, let's go to counsel's argument, Mr. Daniels' argument, that if you were going to charge this separately, that it should have been under the separate, I think it was B, rather than A-1. Am I correct, Mr. Daniels? It was... Subsection A-3. Thank you. Why didn't they charge this under, and I know that's hard to answer for why people in the trial court do things when you're on appeal, but wouldn't that have been cleaner if they had just charged him under the separate offense, which was clearer about what creation was? I mean, that's a distinct possibility, but I cannot assume what went through their head when they were charging these offenses. Based on the evidence alone, it seems like the first portion of him actually creating this content was correctly charged, and then he did possess this content by using his phone. So I think that's probably why they charged it this way. Okay. All right. Thank you. I have no other questions. Justice Reyes? No questions. I think that I want to inquire about the sexual conduct. There were... Was there only one count of aggravated criminal sexual abuse, or were counts knowledge? Correct, Justice. There was only the one count of criminal sexual abuse. They only described a single touching of the child on her butt, but based on when you're looking at the videos, you can see that there's multiple actions that were taken against the child, which is what the trial court recognized and what the people described several times throughout trial. But those were never charged, right? There were multiple acts. There could have been multiple convictions, according to your argument, for aggravated criminal sexual abuse, because in the first video, there were actually three acts, or two at least. Is that correct? Correct, Your Honor. I mean, they could have charged multiple for the criminal sexual... But the state didn't do that. Correct. Okay. I don't have any other questions at this time. Anything further by either of the justices? No. All right. Mr. Daniels, we're going to give you some time for rebuttal now, so you may proceed. Thank you, Your Honor. Just two quick points in rebuttal. First, regarding the first step of the analysis, the state, in talking about why the content of the video matters, was talking about the legislature's intent with regard to the way the charges were brought. And our point is that the charges don't matter here. It's the convictions. And since we're dealing with a conviction for creating and a conviction for possession, the number of acts in the content of the video are irrelevant. And with regard to the abstract elements test, again, the essence of that test is whether it is impossible to commit the greater offense without committing the lesser. And that's true here. And that's why here, under the abstract elements approach, possession of child pornography has to be a lesser included offense of creation of child pornography. Anything further? No, Your Honor, unless Your Honor has any questions. Is it true with possession, though, that there really is no circumstance under which then someone who is creating a video that's on the phone that's being recorded could never be convicted separately of possession? Or is it kind of like the timeframe that we're looking at here that was very short? Certainly, you could be convicted of a separate. You could have two convictions for these two offenses. Donovan would be an example. I realized that Donovan wasn't strictly a one act, one crime rule case, but it's using that same analysis because it was a double jeopardy challenge. And those two analyses overlap. If this were a case where Mr. Rubio had moved out of the States and maybe it wasn't a year, but maybe it was some extended period of time later, then, yes, that would be a basis where you could have those two convictions both stand. But that's not what we have here. And that's why I can't force you to be vacated. All right. Anything further by either Justice Burke or Justice Reyes? All right. Thank you both for your arguments today. Certainly an interesting case presents significant issues, and we will take the matter under advisement. So, thank you both.